WOLLMAN, Circuit Judge.
 

 Gary D. and Sandra Kay Hanson appeal from the district court’s
 
 [1]
 
 affirmance of two bankruptcy court orders: one denying their motions for reclassification of claims and for confirmation of their chapter 11 reorganization plan, and the second confirming a chapter 11 liquidation plan proposed by First Bank of South Dakota, N.A., a creditor. We affirm.
 

 I.
 

 Gary D. and Sandra Kay Hanson (Han-sons), who are engaged in farming near White, South Dakota, filed a petition initiating a chapter 11 reorganization in 1985. When Hansons failed to file a plan within the exclusivity period, a creditor, First Bank of South Dakota, N.A. (First Bank), filed a chapter 11 liquidation plan. Han-
 
 *1312
 
 sons later filed a chapter 11 reorganization plan. Upon approval of both disclosure statements, as amended, the bankruptcy court fixed April 25, 1986, as the last day for filing written ballots accepting or rejecting the plans and scheduled confirmation hearings on both plans. Hansons and First Bank sought confirmation of their respective plans under the cram down provisions of 11 U.S.C. § 1129(b).
 
 [2]
 

 Hansons filed a motion to reclassify claims, seeking to place the unsecured claims of two undersecured creditors, First Bank and Federal Land Bank of Omaha, in one class. The claims of the other unsecured creditors — two trade creditors— would comprise another class, and each remaining class would consist of a separate secured claim. The bankruptcy court found the reclassification impermissible under 11 U.S.C. §§ 506(a) and 1122.
 

 No single class of creditors accepted Hansons’ plan within the time period fixed by the court. Within that time period, however, Sperry-New Holland (Sperry), whose claim comprised an entire impaired class, agreed to accept Hansons’ plan pursuant to a stipulation agreement filed with the court. The actual ballot, which was not filed until fourteen days after the filing deadline, was not accepted by the bankruptcy court.
 

 After the bankruptcy court denied Han-sons’ motion to reclassify and refused to accept the late Sperry ballot, no accepting class remained to support Hansons’ motion for cram down. The court then proceeded to confirm First Bank’s liquidation plan. During the confirmation hearing, Hansons’ attorney attempted to pursue cross-examination designed to establish that First Bank’s plan was not proposed in good faith because the bank never intended to cooperate with Hansons and saw liquidation as the only solution. The court sustained an objection to this questioning, apparently on the ground that it dealt with an irrelevant matter.
 

 On appeal, the district court found the bankruptcy court had not abused its discretion in denying Hansons’ motion for reclassification, in refusing to accept Sperry’s late ballot, or in sustaining the objection to the cross-examination on good faith.
 

 II.
 

 We review the findings of the bankruptcy court under the clearly erroneous standard.
 
 [3]
 

 Wegner v. Grunewaldt,
 
 821 F.2d 1317, 1320 (8th Cir.1987); Bankr.R. 8013. Under this standard we must accept the bankruptcy court’s findings unless we are left with a
 
 “
 
 ‘definite and firm conviction that a mistake has been committed.’ ”
 
 Anderson v. City of Bessemer City,
 
 470 U.S. 564, 573, 105 S.Ct. 1504, 1511; 84 L.Ed.2d 518 (1985) (quoting
 
 United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 541-42, 92 L.Ed. 746 (1948)).
 

 First, Hansons argue that the bankruptcy court erroneously denied their motion for reclassification of claims. Classification of claims is addressed in 11 U.S.C. § 1122, which provides in pertinent part:
 
 [4]
 
 “(a) * * * a plan may place a claim or an
 
 *1313
 
 interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.”
 

 Hansons contend that the unsecured claims and the undersecured portions of claims are not substantially similar and therefore may be placed in separate classes pursuant to section 1122(a). This distinction alone does not warrant separate classification, however, because under the Code the undersecured portion of a claim is an unsecured claim. 11 U.S.C. § 506(a).
 

 Hansons also contend their proposed reclassification is permissible because section 1122(a) does not require all substantially similar claims to be placed in one class; it requires only that all claims which are placed in one class be substantially similar. We agree that 11 U.S.C. § 1122(a) does not prohibit the placement of substantially similar claims in different classes.
 
 In re Jersey City Medical Center,
 
 817 F.2d 1055, 1060-61 (3rd Cir.1987);
 
 In re U.S. Truck Co.,
 
 800 F.2d 581, 584-86 (6th Cir.1986) (discussing the legislative history of § 1122);
 
 In re LeBlanc,
 
 622 F.2d 872, 879 (5th Cir.1980).
 

 The debtor’s discretion to place similar claims in different classes is not unlimited, however. Classifications designed to manipulate class voting must be carefully scrutinized. There is potential for abuse when the debtor has the power to classify creditors in a manner to assure that at least one class of impaired creditors will vote for the plan, thereby making it eligible for the cram down provisions.
 
 U.S. Truck,
 
 800 F.2d at 586.
 

 The bankruptcy court’s denial of Hansons’ motion for reclassification was not clearly erroneous. Hansons’ motion for reclassification was filed on the last day to accept or reject the plan, and no single class accepted the plan within the prescribed period. This coincidence could have led the court to conclude that the motion was filed only to secure an accepting class for the plan. Hansons maintain this was not the purpose of the reclassification, however, because Sperry, whose claim entirely comprised an impaired class, had entered into a stipulation with Hansons agreeing to accept their plan. The stipulation is irrelevant, however, because only actual acceptance fulfills the section 1129(a)(10) requirement for cram down.
 

 Citing
 
 U.S. Truck,
 
 Hansons also contend that separate classification for the purpose of securing an accepting class is permissible.
 
 U.S. Truck
 
 is distinguishable, however, because an employee union, the separately classified creditor in that case, had a “virtually unique interest.”
 
 U.S. Truck,
 
 800 F.2d at 587. The union’s claim was actually an amalgamation of individual claims and was likely to become part of a future collective bargaining process.
 
 In re U.S. Truck Co.,
 
 47 B.R. 932, 939-40 (E.D.Mich.1985), aff’
 
 d,
 
 800 F.2d 581 (6th Cir.1986). The union also had a different stake than the other impaired creditors in the future viability of the reorganized company. It had a noncreditor interest in the ongoing employment relationship between its members and the debtor.
 
 U.S. Truck,
 
 800 F.2d at 587.
 

 Hansons contend that separate classification of trade creditors is permissible because trade creditors also have a different stake in the future viability of the reorganized debtor. Although there is some case authority for this distinction,
 
 e.g., LeBlanc,
 
 622 F.2d at 879, the interests of trade creditors are not sufficiently “unique” to warrant separate classification in this case. Given the facts indicative of vote manipulation and the broad discretion of the bankruptcy court in matters of classification, we are unable to say the bankruptcy court’s finding of impermissible classification was clearly erroneous.
 
 [5]
 

 III.
 

 Second, Hansons argue the bankruptcy court erred in disallowing Sperry’s late bal
 
 *1314
 
 lot. Generally, holders of claims must accept or reject a plan within the time fixed by the court, Bankr.R. 3017(c), which in this case was April 25, 1986. Rule 9006(b)(1) provides for an enlargement of that time, however, stating that “the court for cause shown may at any time in its discretion * * * (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.” An oral motion is sufficient if made during a hearing, but it must “state with particularity the grounds therefor” and “set forth the relief or order sought.” Bankr.R. 9013.
 

 We conclude that the bankruptcy court did not abuse its discretion in disallowing the Sperry ballot. There is no question but that the ballot was late; it was not filed until May 9, 1986, fourteen days after the filing date set by the court. Therefore, the ballot could have been effective only if the bankruptcy court in the exercise of its discretion pursuant to a motion under Rule 9006(b)(1) had determined that Sperry’s failure to accept the plan within the prescribed time was the result of excusable neglect.
 

 No motion for enlargement of time under Rule 9006(b)(1) is apparent from the record. Hansons’ brief acknowledges this omission, noting that “[d]ebtors in effect moved the Court for enlargement of the time in which to file the accepting ballot under Bankruptcy Rule of Procedure 9006(b)(1) since the failure to get the ballot in on time was due to excusable neglect.” Brief for Appellant at 14. During the hearing, Hansons’ attorney asked the court whether the late ballot would be accepted, but gave no indication that he was requesting an enlargement of time under Rule 9006(b)(1).
 
 [6]
 
 Although the hearing transcript contains some discussion indicating why the ballot was late, this discussion was not sufficiently focused to put the court or opposing counsel on notice that Hansons were requesting the court to rule on a motion for enlargement of time due to Sperry’s excusable neglect.
 
 Cf. Raughley v. Pennsylvania R.R. Co.,
 
 230 F.2d 387, 391 (3rd Cir.1956) (informal request to a judge with no notice to an opposing party and no order by the judge following the request was not a motion under Fed.R.Civ.P. 7(b)(1)).
 
 [7]
 
 It can hardly be said that the court abused its discretion concerning a motion which was not before it.
 

 Even if the court gleaned a Rule 9006(b)(1) motion from the above-described discussion, we cannot overturn the court’s disallowance of the ballot unless its failure to grant an enlargement of time constituted an abuse of discretion.
 

 Neither the Bankruptcy Code nor the Rules define excusable neglect. Rather, it is a flexible standard that is subject to interpretation by the trier of fact in each instance.
 
 In re Arosemena,
 
 65 B.R. 246, 248 (Bankr.M.D.Fla.1986). A number of courts have interpreted “excusable neglect” as meaning “ ‘the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.’ ”
 
 In re Carlton,
 
 72 B.R. 543, 546 (Bankr.E.D.N.Y.1987) (quoting
 
 In re Manning,
 
 4 B.C.D. 304, 305 (Bankr.D.Conn.1978));
 
 Arosemena,
 
 65 Bankr. at 248. The burden of proving excusable neglect is on the party seeking the enlargement of time.
 
 Carlton,
 
 72 Bankr. at 546.
 

 Courts have been more inclined to conclude that there is “excusable neglect” when the creditor was diligent and the late filing was due to inadequate notice or an event beyond the creditor’s control.
 
 In re Heyward,
 
 15 B.R. 629, 637 (Bankr.E.D.N.Y.1981). Conduct does not constitute excusable neglect, however, when the delay was within the creditor’s control,
 
 In re
 
 
 *1315
 

 Mickel,
 
 35 B.R. 28, 30-31 (Bankr.D.S.C. 1983), and could have been prevented by the exercise of diligence by the party failing to perform.
 
 Arosemena,
 
 65 Bankr. at 248;
 
 In re Elliano,
 
 9 B.R. 287, 289 (Bankr.E.D.N.Y.1981).
 

 Hansons argue that the delay was not their fault and occurred as a result of a personnel change at Sperry’s corporate headquarters. Only the delay occasioned by Sperry’s personnel changes is relevant, however, because excusable neglect is determined with reference to the person whose duty it was to perform. Accordingly, we conclude it was not an abuse of discretion for the bankruptcy court to decline an enlargement of time because employee turnover is considered within the employer’s reasonable control, and any delay from such turnover is due to the lack of diligence.
 
 Arosemena,
 
 65 Bankr. at 247-48 (late filing of claim due to employee turnover in position monitoring debtor’s account is not excusable neglect).
 

 Hansons further contend that the late Sperry ballot should have been allowed because First Bank was aware of the stipulation agreement and therefore would not have been prejudiced.
 
 [8]
 
 We conclude that lack of prejudice to the other interests is not sufficient in itself to warrant an enlargement of time. Rule 9006(b)(1), which extends the time for doing an act “where
 
 the failure to act
 
 was the result of excusable neglect,” (emphasis added) focuses on the party causing the delay. While the prejudicial effect on other interests may be a factor in the exercise of the court’s discretion under the rule, the excusable neglect must result at least in part from the act of the party failing to perform.
 
 [9]
 

 IV.
 

 Finally, Hansons argue the bankruptcy court’s finding that First Bank’s plan was proposed in good faith was clearly erroneous because the court precluded cross-examination tending to show that First Bank never intended to cooperate with Hansons and considered liquidation to be the only solution.
 

 Although 11 U.S.C. § 1129(a)(3) requires that “[t]he plan has been proposed in good faith and not by any means forbidden by law,” the term “good faith” is left undefined by the Code. In the context of a chapter 11 reorganization, however, a plan is considered proposed in good faith “if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.”
 
 In re Toy & Sports Warehouse, Inc.,
 
 37 B.R. 141, 149 (Bankr.S.D.N.Y.1984);
 
 accord In re White,
 
 41 B.R. 227, 229 (Bankr. M.D.Tenn.1984).
 

 We conclude that the exclusion of the proposed cross-examination did not render the bankruptcy court’s finding that First Bank’s plan was proposed in good faith clearly erroneous. The Code permits creditors to file liquidation plans in farm bankruptcies once the exclusivity period passes, 11 U.S.C. §§ 1123(b)(4), 1129(a)(11);
 
 In re Button Hook Cattle Co.,
 
 747 F.2d 483, 486 (8th Cir.1984), and the fact that a creditor proposes a liquidation plan is not evidence of bad faith.
 
 In re Yagow,
 
 60 B.R. 543, 547 (Bankr.D.N.D.1986). In addition, First Bank’s opposition to Hansons’ reorganization efforts is not a violation of the “good faith” requirement when such opposition is based on its reasonable belief
 
 *1316
 
 that Hansons liquidation is in the bank’s best interest.
 
 See 5 Collier on Bankruptcy
 
 § 1129.02[3] (15th ed. 1987).
 

 The district court’s order is affirmed.
 

 [1]
 

 . The Honorable John B. Jones, United States District Judge for the District of South Dakota.
 

 [2]
 

 .Section 1129 provides two mechanisms for confirmation of a chapter 11 plan. The first requires satisfaction of all subsection (a) requirements, including (a)(8), which necessitates acceptance of the plan by all impaired classes of claims or interests. The second mechanism, in addition to incorporating all requirements of subsection (a) except for (a)(8), requires the plan not discriminate unfairly and be fair and equitable with respect to each class of impaired claims or interests that has not accepted the plan. 11 U.S.C. § 1129(b). This second mechanism is referred to as "cram down” because the plan is confirmed over the objections of impaired classes of creditors. At a minimum, cram down requires acceptance by one impaired class. 11 U.S.C. § 1129(a)(10).
 

 [3]
 

 . This standard is also applicable when the court does not enunciate its findings as such because its opinion nonetheless was based upon explicit determinations.
 
 In re Clarkson,
 
 767 F.2d 417, 419 (8th Cir.1985).
 

 [4]
 

 . Hansons’ original motion sought classification of the unsecured trade creditors’ claims under the administrative convenience provisions of 11 U.S.C. § 1122(b). In their briefs and in oral argument, however, Hansons have relied exclusively on the "substantially similar” claims language of 11 U.S.C. § 1122(a) and, accordingly, we address only that subsection.
 

 [5]
 

 . Citing
 
 In re Planes, Inc.,
 
 48 B.R. 698 (Bankr.N.D.Ga.1985), Hansons also argue the final determination on classification must await an evi-dentiary hearing with respect to cram down. Unlike the present case, the classification determination in
 
 Planes
 
 had to be delayed because the manipulative effect of multiple classes of unsecured claims could not be determined until deficiency and other contingent, unliquidated claims were estimated.
 
 Id.
 
 at 703.
 

 [6]
 

 . Hansons’ attorney asked: "Can I be ruled, Your Honor, on whether Sperry-New Holland’s late ballot is acceptable?”
 

 [7]
 

 . Fed.R.Civ.P. 7(b)(1), from which Bankr.R. 9013 was derived, states:
 

 An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.
 

 [8]
 

 . Hansons rely on
 
 In re Trail’s End Lodge, Inc.,
 
 54 B.R. 898 (Bankr.D.Vt.1985), which held that a three-day delay due to late mail delivery was excusable neglect under Rule 9006(b)(1).
 
 Id.
 
 at 902. The court also found the debtor was not prejudiced by the delay.
 
 Id. Trail’s End
 
 is distinguishable from the present case because it involved only a three-day delay that was wholly outside the creditor’s control. In contrast, the delay in filing Sperry's ballot was fourteen days and resulted from a factor within Sperry’s control.
 

 [9]
 

 . Although noting that some courts have examined the prejudicial effect of a late filing in determining whether excusable neglect exists under Rule 9006(b), the Eleventh Circuit found it irrelevant.
 
 In re South Atlantic Financial Corp.,
 
 767 F.2d 814, 818 (11th Cir.1985),
 
 cert. denied,
 
 106 S.Ct. 1197 (1986). The court stated the “plain meaning” of Rule 9006(b) clearly focused on the movant’s actions, not on the effect that an extension might have on the other parties’ positions.
 
 Id.
 
 at 819.