**In re LUMBER EXCHANGE BUILDING LIMITED PARTNERSHIP, a Minnesota Limited Partnership, Debtor.**

**LUMBER EXCHANGE BUILDING LIMITED PARTNERSHIP, Plaintiff/Appellant,**

**v.**

**The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant/Appellee.**

Bankruptcy No. 3–90–5226.
Civ. No. 4–91–302.

United States District Court, D. Minnesota, Fourth Division.

Sept. 3, 1991.

Michael L. Meyer, Ravich Meyer & Kirkman, P.A., Minneapolis, Minn., for plaintiff/appellant.

Kim A. Anderson, Dorsey & Whitney, Minneapolis, Minn., for defendant/appellee.

## MEMORANDUM OPINION AND ORDER

### DIANA E. MURPHY, District Judge.

Now before the court is the appeal of the Lumber Exchange Building Limited Partnership (appellant) from the decision of the bankruptcy court granting the motion of the Mutual Life Insurance Company of New York (appellee) to dismiss appellant's Chapter 11 reorganization petition. 125 B.R. 1000.

Appellant was formed in 1984 to acquire, renovate, and own as an investment, the Lumber Exchange Building (the building) in Minneapolis, Minnesota. Appellant has no employees. Its two general partners are individuals, Gary O. Benson, and Robert M. Mecay, who together hold sixty-six and two-thirds percent interest in the building. Appellant's sole limited partner is another limited partnership, known as Lumber Exchange Investors Limited Partnership (the investors). Benson and Mecay are the general partner of the investors and together hold a one percent partnership. The limited partners of the investors are fifty-six individuals who hold the remaining ninety-nine percent of the partnership interest.

Appellee is appellant's major creditor. At the time of the filing of the Chapter 11 petition, it was owed $20,877,504.64. The debt is the result of a nonrecourse loan and is secured by a real estate mortgage, a security agreement on the building, and an assignment of leases and rents. Appellant currently values the building at $7,000,000.00.[1] Assuming that the valuation is correct, appellee is undersecured in the amount of $13,877,504.64. Other claims include:

| | |
|---|---|
| Hennepin County, real estate taxes | $415,458.99 |
| Midway National Bank, secured | $125,048.00 |
| Minneapolis Water Works, secured | $ 37,952.00 |
| Unsecured Trade Creditors | $207,300.00 |
| Unsecured insider (Twin City Realty)[2] | $245,700.00 |

Appellee's loan closed in September 1987. It first went into default in February 1989. The parties entered into a forbearance agreement in June 1989, which provided appellant a period of ten months to cure the defaults. At the end of the period, appellant was unable to fully perform and in June 1990, appellee commenced mortgage foreclosure proceedings. Appellant then filed its voluntary petition for Chapter 11 relief on November 7, 1990, one day prior to a scheduled hearing in state court concerning the appointment of a receiver in foreclosure.

---

**1.** In its initial filing, appellant valued the building at $13,000,000.00; however, at the hearing on appellee's motion, it offered valuation evidence that fixed the value at $7,000,000.00. Appellant's proposed plan, filed on February 22, 1991, is premised on the lower value.

**2.** The real estate taxes and water liens have priority over appellee's mortgage thereby further reducing the value of appellee's lien by those amounts. Midway National Bank is secured by proceeds from certain successful tax litigation. Twin Town Realty, an affiliate of the appellant which is owned by Benson and Mecay, is the leasing agent of appellant. A wholly owned subsidiary of that entity, Lumber Exchange Management Company, operates the building.

Appellee filed a motion for dismissal or relief from stay on December 6, 1990. The motion for dismissal was based on an alleged bad-faith filing, while the relief from stay motion was premised on the alleged legal inability of appellant to obtain confirmation of a plan over appellee's objection. In response, appellant offered a model plan at the evidentiary hearing and filed a proposed plan on the day the issues were orally argued. The proposed plan generally treats the various claims in the following manner:

*Unclassified* Hennepin County

*Class A* Midway National Bank, unimpaired in the amount of $125,048.00.

*Class B* Minneapolis Waterworks, impaired with fully secured 36 month term note in the amount of $37,952.00.

*Class C–1* Appellee, impaired, with secured 10–year note in the amount of $7,000,000.00

*Class C–2* Appellee, impaired unsecured claim in the amount of $13,877,-504.64 to be satisfied: in part, through a pro rata payment, on the effective date of the plan, from a $200,000 distribution fund to be shared with Class D; and, in part through the right to receive certain specified payments upon a later sale of the property or distribution to partners.

*Class D* All other allowed unsecured claims. To be satisfied through a pro rata payment, on the effective date of the plan, from the $200,000.00 distribution fund to be shared with Class C–2.

*Class E* All pre-petition partnership interest in appellant, including those held by reason of the ownership of an interest in Investors. Holders to be given the right to invest new capital. Holders who do not invest would lose their interests. Those who do invest would have their interests adjusted based on the ratio of their contribution to the total new investment.

The appellant offered testimony at the initial hearing that $800,000.00 in new capital would be required to fund the plan and ongoing operations. Of that amount, $200,000.00 would be placed in the distribution fund, and $600,000.00 would be used for certain building changes, improvements, and for other tenant targeted incentives designed to enhance marketability of leases.

On March 18, 1991, the bankruptcy court denied appellee's motion to dismiss because of an alleged bad-faith filing, but found that appellee would be entitled to relief from stay. Rather than simply granting relief from stay, however, the bankruptcy court dismissed appellant's case pursuant to 11 U.S.C. § 1112(b)(2) for inability to effectuate a plan. This appeal followed.[3]

On an appeal from a judgment of the bankruptcy court, the district court applies a clearly erroneous standard of review to factual findings and a *de novo* standard of review to questions of law. *In re Martin*, 761 F.2d 472, 474 (8th Cir.1985); Bankr.Rule 8013.

The bankruptcy court found that appellant could separately classify similar claims but that appellant's classification was nothing more than a "thinly veiled attempt to manipulate the vote [to confirm the plan] to assure acceptance of the plan by an impaired class and meet the requirements of 11 U.S.C. § 1129(a)(10)." *See* Order at 1006.

Appellant argues that separate classification is not prohibited by the bankruptcy code and points out the reasons for its separate classification in the plan. It acknowledges, however, that such separate classification cannot be for the purpose of manipulating class voting. It relies on *Hanson v. First Bank, N.A.*, 828 F.2d 1310 (8th Cir.1987). Appellee responds that the bankruptcy code prohibits separate classification of similar claims. It relies on *In re Los Angeles Land and Invs., Ltd.*, 282 F.Supp. 448 (D.Hawaii 1968), *aff'd*, 447 F.2d 1366 (9th Cir.1971) (per curiam), and its progeny.[4]

---

**3.** It does not appear that appellee has appealed the bankruptcy's court denial of its motion to dismiss on the grounds that appellant's filing was in bad faith.

**4.** Appellee apparently acknowledges that the Eighth Circuit in *Hanson* did not follow the line of cases which has resulted from *In re Los Angeles Land.* It appears therefore that appel-

It is settled in this circuit that section 1122(a) does not prohibit the placement of substantially similar claims in different classes. *Hanson,* 828 F.2d at 1313. Nonetheless, the *Hanson* court cautioned that the debtor's discretion is not unlimited, and classifications designed to manipulate voting should be closely scrutinized. *Id.* A finding of classification for such an improper purpose is a factual one, reviewed under the clearly erroneous standard. *Id.*

In this case, the bankruptcy court did not reject debtor's separate classifications under section 1122(a) as a matter of law. Order at pp. 1005–06. After discussing the lack of any apparent reason for debtor's proposed classification, see Order at p. 1006 & nn. 8–9, the bankruptcy court found that appellant's purpose in the classification was a "thinly veiled attempt to manipulate the vote to assure acceptance of the plan by an impaired class and meet the requirement of 11 U.S.C. § 1129(a)(10)." Order at 1006.

After review of the record and consideration of the arguments of the parties, the court cannot conclude that the bankruptcy court's finding is clearly erroneous. It appears that appellant could not obtain approval of the plan unless it classified similar claims in different classes. Moreover, as the bankruptcy court's order points out, appellant's explanation for its proposed classification scheme is unreasonable in any event. Order at p. 1006 & nn. 8 and 9. Under all the circumstances, the bankruptcy court's finding should be affirmed.[5]

The bankruptcy court found that even if appellant's classification were legitimate, the plan could not be confirmed because it failed to meet the requirements of section 1129. In that regard, the bankruptcy court rejected appellant's argument regarding the new value exception to the absolute priority rule under the bankruptcy code, Order at p. 1007, and found that even if such an exception still existed, appellant's

plan did not satisfy the fair and equitable test under section 1129. Order at pp. 1007–09.

Appellant argues that the Eighth Circuit has affirmed the vitality of the new value exception to the absolute priority rule under the code. It relies on *In re Ahlers,* 794 F.2d 388, 403 (8th Cir.1986), *rev'd on other grounds, Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *In re Greystone III Joint Venture,* 102 B.R. 560, 574–75 (Bankr.W.D.Tex.1989), *aff'd,* 127 B.R. 138 (W.D.Tex.1990). It also argues that since the junior creditors would be paying for their new partnership shares, the plan would satisfy section 1129 under that exception to the rule.

Appellee rejects appellant's reading of *Ahlers.* It claims that although the Supreme Court did not specifically rule out a new value exception under the code, the court decided the case on narrower grounds. Appellee points to the Court's remark that its decision was "not to be taken as any comment on the continuing vitality of the [*Case v.*] *Los Angeles Lumber* [*Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939) ] exception" to the absolute priority rule. *Ahlers,* 485 U.S. 203 n. 3, 108 S.Ct. 967 n. 3. Appellee argues that under the code, any junior creditor can retain an interest only if the others have been paid in full. It relies on the language of 11 U.S.C. § 1129(b)(2)(B), and several cases. *E.g., In re Drimmel,* 108 B.R. 284, 288–89 (Bankr.D.Kan.1989) (citing cases and acknowledging split among federal courts).

11 U.S.C. § 1129(b)(1) provides that a plan may be confirmed although rejected by an impaired class if the plan does not discriminate unfairly, and if it is fair and equitable to each dissenting class of claims or interests that is impaired under the plan. *See* Order at p. 1007. Section 1129(b)(2)(B) legislatively prescribes what the "fair and equitable" standard minimally includes un-

---

lee concedes appellant could create separate classifications under section 1122, so long as the purpose was not to manipulate voting.

**5.** It is not at all clear that the court would need to discuss any of the other issues raised by this

appeal because appellant's failure to satisfy section 1122(a) may end the inquiry. *See Hanson,* 828 F.2d at 1313 & n. 5 (affirming rejection of debtor's plan before evidentiary hearing on cram down issue).

der the code [as opposed to case law under the act]. Order at p. 1007. The standard requires that each member of a rejecting unsecured class be paid in full, or that the holders in junior classes receive no property on account of their claims or interests. The bankruptcy court noted that this is simply a codification of the absolute priority rule, without its exceptions. Order at p. 1008.

When Congress enacted the code in place of the act, that statute became the law. Section 1129(b)(2)(B) dictates the absolute priority rule with no exceptions. This reading appears to be confirmed by the code's legislative history. *See Kahm & Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1361–62 (7th Cir.1990) (discussing legislative history of bankruptcy code in regard to absolute priority rule). Although *In re Ahlers* apparently assumes the continuing vitality of the new value exception to the absolute priority rule under the code, that issue was not specifically decided in the circuit court, *see In re Ahlers*, 794 F.2d 388 (8th Cir.1986), *rev'd on other grounds, Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), and despite the urging of the government as an *amicus curiae*, the Supreme Court also refused to decide the issue. *Ahlers*, 485 U.S. at 203 n. 3, 108 S.Ct. 967 n. 3.

■ Like the Supreme Court in *Ahlers*, this court need not reach the question of whether the enactment of the code eliminated the new value exception to the absolute priority rule. The bankruptcy court found that the plan could not be confirmed even assuming a new value exception because the fair and equitable requirements of section 1129(b)(2)(B) are the minimum requirements. In confirming a plan, the court noted that it must "identify the competing parties and [consider] their relative positions in the case. The bankruptcy court then went on to discuss the fact that

Class D claims represent only two percent of the total creditor claims in the case whereas appellee's interest represented the balance. After review of the evidence submitted, the bankruptcy court found that the plan failed the fair and equitable test.

The court is not persuaded that the bankruptcy court's finding that appellant's plan failed the fair and equitable requirement of section 1129 is erroneous. The claims of the Class D creditors represent only two percent of the total claims while appellee's claim, in essence, represents the balance. Approval of appellant's plan would therefore result in confirmation of a plan for the benefit of two percent of the claims. As the bankruptcy court noted, the "only other apparent purpose for the cramdown would be to provide the proposed investors with a captive and cheap source of financing for a speculative venture." Order at p. 1009.

After carefully reviewing the record and the arguments, this court does not find any error of fact or law in the order of the bankruptcy court. It should therefore be affirmed.[6]

### ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that the order of the bankruptcy court dated March 18, 1991 is affirmed.

---

6. As an alternate argument, appellant claims that the opportunity for the partners to reinvest is not an interest in the property because that interest was forfeited by the reorganization. The bankruptcy court rejected this argument because the fact that a partner is given the opportunity to reinvest—as opposed to other persons—necessarily means that the new interest is received "on account" of the existing property interest, thus falling within the provisions of the code. Order at p. 1008. Appellant's argument on this issue is not persuasive.