In re LUMBER EXCHANGE BUILDING LIMITED PARTNERSHIP, a Minnesota Limited Partnership, Debtor.

LUMBER EXCHANGE BUILDING LIMITED PARTNERSHIP, Appellant,

v.

The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellee.

No. 91–3280.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1992.

Decided June 29, 1992.

Michael L. Meyer, Minneapolis, Minn., for appellant.

Kim A. Anderson, Minneapolis, Minn., for appellee.

Before WOLLMAN and HANSEN, Circuit Judges, and ROY,* Senior District Judge.

WOLLMAN, Circuit Judge.

Lumber Exchange Building Limited Partnership appeals from the dismissal of its Chapter 11 bankruptcy case. We affirm.

## I.

Lumber Exchange Building Limited Partnership (Lumber Exchange) was formed to acquire, renovate, and own as an investment the Lumber Exchange Building, located in Minneapolis, Minnesota. The Mutual Life Insurance Company of New York (MONY) loaned more than $20 million to Lumber Exchange on a nonrecourse refinancing loan secured by a mortgage and a security agreement on the building and by an assignment of leases and rents. After Lumber Exchange defaulted, MONY commenced foreclosure proceedings. Lumber Exchange then filed a Chapter 11 bankruptcy petition, valuing its building at $7 million. On the basis of that valuation, MONY is undersecured in the amount of $13,877,504.64. Other claims against Lumber Exchange's estate total approximately $1,000,000, of which $453,000 is owed to unsecured trade creditors.

MONY moved for relief from the section 362 automatic stay or, in the alternative, for dismissal of the case. In response, Lumber Exchange proposed a reorganization plan. The plan classified MONY's deficiency claim separately from the unsecured claims of trade creditors, and treated that claim more generously. Lumber Exchange proposed financing the plan with new capital from its partners, $200,000 of which would be shared pro rata by all the unsecured creditors.

The bankruptcy court held that MONY should be granted relief from the automatic stay on two grounds. First, Lumber Exchange could not propose a confirmable reorganization plan without impermissibly classifying the creditors. Second, assuming that the plan's classification was proper, the plan violated the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B) by permitting Lumber Exchange partners to retain their equity interests. Moreover, the bankruptcy court ruled that the new value exception to the absolute priority rule had no force under the Bankruptcy Code. Even if the new value exception did apply, the court held, the plan was not fair and equitable as to each dissenting class as required by 11 U.S.C. § 1129(b)(1), and therefore was not confirmable.

The lack of a confirmable reorganization plan also served as the basis for the bankruptcy court's dismissal of Lumber Exchange's Chapter 11 case. The bankruptcy court dismissed the case under 11 U.S.C. § 1112(b), for inability to effectuate a plan.[1] The district court[2] upheld both the relief from the automatic stay and the dismissal, 134 B.R. 354, and Lumber Exchange appeals.

## II.

■ A bankruptcy court may dismiss a Chapter 11 case or convert it to a case under Chapter 7 "for cause, including ... inability to effectuate a plan." 11 U.S.C. § 1112(b)(2); *In re Fossum*, 764 F.2d 520, 521–22 (8th Cir.1985). The bankruptcy court has broad discretion in deciding whether to dismiss or convert a Chapter 11 case. *In re Gonic Realty Trust*, 909 F.2d 624, 626–27 (1st Cir.1990); *In re Koerner*, 800 F.2d 1358, 1368 (5th Cir.1986).

It is undisputed that MONY would not accept any plan unless the plan proposed to pay MONY in full or to surrender the building. Because there is not enough money in the estate to pay MONY's claims, Lumber Exchange could obtain confirmation of its plan only by using the cramdown provisions of 11 U.S.C. § 1129. A precondition to cramdown is that an impaired

---

* The Honorable ELSIJANE TRIMBLE ROY, United States Senior District Judge for the Western District of Arkansas, sitting by designation.

**1.** *In re Lumber Exchange Ltd. Partnership,* 125 B.R. 1000 (Bankr.D.Minn.1991).

**2.** The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

class accept the plan. 11 U.S.C. § 1129(a)(10). Classifying MONY's deficiency claim separately from the claims of unsecured trade creditors created an impaired class, the trade creditors, that could accept the plan. If the claims were not classified separately, however, MONY could block acceptance by the class because MONY holds approximately 97% of the unsecured claims. Lumber Exchange's plan is therefore confirmable only if its classification is proper.

■ A debtor may classify substantially similar claims separately for "reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims." *In re Greystone III Joint Venture*, 948 F.2d 134, 139 (5th Cir.1991) (as amended), *petition for cert. filed*, May 27, 1992, No. 91–1902; *see also Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1313 (8th Cir.1987). We review *de novo* the propriety of classification.[3]

■ Lumber Exchange argues that classifying MONY's deficiency claim separately from the claims of other unsecured creditors is warranted for three reasons. First, Lumber Exchange suggests that MONY's claim may be classified separately because MONY's unsecured recourse claim arose by operation of law under 11 U.S.C. § 1111(b), whereas the trade creditors bargained for recourse debt. We rejected this argument in *Hanson*, 828 F.2d at 1313 ("This distinction alone does not warrant separate classification ... because under the Code the undersecured portion of a claim is an unsecured claim."). *See also In re Bryson Properties, XVIII*, 961 F.2d 496, 501–02 (4th Cir.1992); *Greystone*, 948 F.2d at 140. How the claims of MONY and the trade creditors achieved their status does not alter their current legal character and thus does not warrant separate classification.

■ Second, Lumber Exchange argues that separate classification is warranted because secured creditors look to different assets for repayment than do unsecured creditors and because the maintenance of good business relationships is important to a debtor's ongoing business. There is some authority for the proposition that a plan may classify trade creditors separately from, and treat them more generously than, other creditors if doing so is necessary to a debtor's ongoing business. *See Hanson*, 828 F.2d at 1313; *Greystone*, 948 F.2d at 141. The integrity of Lumber Exchange's argument, however, is belied here by the plan's own terms. The proposed plan treats trade creditors less generously, not more. Accordingly, we conclude that this proffered justification for separate classification is not legitimate.

Third, Lumber Exchange suggests that because MONY's exposure is so much greater than that of the other unsecured creditors, Lumber Exchange must treat MONY differently in order to satisfy the fairness condition to cramdown. We agree with the bankruptcy court, *Lumber Exchange*, 125 B.R. at 1006 n. 8, that this argument is ironic in light of the terms of the proposed plan. First, the claims of unsecured trade creditors total $453,000, compared to MONY's $13,877,504.64 unsecured claim. Both classes would share pro rata in the $200,000 of new capital contributed by Lumber Exchange partners. Lumber Exchange, in effect, suggests that "fairness" demands separate classification to facilitate the cramdown of a plan, at least in part to pay trade creditors approximately $6,600, a suggestion we find untenable. Second, separate classification of MONY's claim eliminates a significant benefit of electing recourse status under 11 U.S.C. § 1111(b)—MONY's opportunity to vote for or against confirmation as a mem-

---

**3.** A close reading of *Hanson*, 828 F.2d at 1312–13, reveals that the propriety of classification is a question of law subject to *de novo* review, while the factual findings upon which the bankruptcy court based its decision are reviewed for clear error. Indeed, the case cited in *Hanson* as authority for the appropriate standard of review, *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987), recognized this standard of review for mixed questions of law and fact. *See also Greystone*, 948 F.2d at 140 n. 5, 141 n. 7. The parties do not dispute the factual basis for the bankruptcy court's decision in the case before us. We therefore review its legal conclusion *de novo*.

ber of the class of unsecured creditors. *See Greystone,* 948 F.2d at 140. Finally, the amount of trade creditor debt is minimal compared to MONY's unsecured claim. There appears no practical reason, therefore, why Lumber Exchange could not classify the claims together and offer them similar treatment. We therefore do not accept Lumber Exchange's "fairness" justification as a legitimate reason for separate classification in the circumstances present here.

■ Classifying MONY's unsecured claim separately is the only means by which Lumber Exchange could obtain the acceptance of one impaired class, because MONY would dominate the vote in any class in which it was placed. Since Lumber Exchange offers no legitimate reason for its separate classification of MONY's unsecured claim, we, like the bankruptcy court, conclude that separate classification was "a thinly veiled attempt to manipulate the vote to assure acceptance of the plan by an impaired class and meet the requirements of 11 U.S.C. § 1129(a)(10)." *Lumber Exchange,* 125 B.R. at 1006. This, of course, is improper.

■ Because Lumber Exchange could not propose a confirmable plan without improperly classifying creditors,[4] the bankruptcy court was free to dismiss its Chapter 11 case or to convert it to a case under Chapter 7, "whichever [was] in the best interest of creditors and the estate." 11 U.S.C. § 1112(b). The bankruptcy court concluded that dismissal was in the creditors' best interest, reasoning that MONY could block any plan that did not pay its claim in full. Furthermore, the court stated, even if outside investors could be found to finance a plan, the only beneficiaries of confirmation would be the unsecured trade creditors, whose claims are substantially similar to MONY's, and the new investors. The court determined that such a result would not be fair to MONY, which holds the vast bulk of the claims against Lumber

Exchange. Finally, the bankruptcy court noted that Lumber Exchange's case was "substantially a single liability case," implicitly concluding that it did not belong in Chapter 11. *Lumber Exchange,* 125 B.R. at 1010. We see no reason to disturb the bankruptcy court's exercise of discretion here.

Having concluded that Lumber Exchange's plan would not be confirmable without improperly classifying the creditors, we need not address the absolute priority rule, the viability of the new value exception, or whether the plan would be fair and equitable.

The district court's order of affirmance is affirmed.

---

**4.** The unsecured creditors' committee also submitted a model plan, but the bankruptcy court held that it was not confirmable because it treated some claims more favorably than others

within the same class, in violation of 11 U.S.C. § 1123(a)(4), and because it would not be fair and equitable. The parties do not challenge this conclusion, and we therefore do not address it.