In the Matter of NORTH AMERICAN ACCEPTANCE CORPORATION, NAAC of Washington, Inc., Debtors.

Bankruptcy Nos. B74–290A, B74–635A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Dec. 7, 1979.

Robert E. Tritt, Hicks, Maloof & Campbell, Atlanta, Ga., for trustee.

Robert D. Marshall, Trotter, Bondurant, Griffin, Miller & Hishon, Atlanta, Ga., for claimant.

## ORDER AND MEMORANDUM OF OPINION DENYING PROOF OF CLAIM OF GRANITE EQUIPMENT LEASING CORPORATION

A. D. KAHN, Bankruptcy Judge.

The above-named debtors, hereinafter referred to as NAAC and NAAC/W, filed reorganization petitions with this Court in early 1974. During the summer of that year, a bar date was set for the filing of proofs of claims in both cases. Creditors who file their proofs of claim after that date, which was ultimately set at March 31, 1975, are ineligible to vote on the plans of reorganization for these debtors and to participate in distribution of payments provided for by the debtors' plans, unless the creditors can show that their tardiness was caused by "excusable neglect." R.Bankr. Proc. 10–401, 906(b).

On the basis of Rules 10–401 and 906(b), the Trustee has objected to late proofs of claims filed on December 12, 1978 by GRANITE EQUIPMENT LEASING CORPORATION. Granite asserts that it never actually received written notice of the bar date, despite sworn testimony by the Trustee that such a notice was mailed to all scheduled creditors such as Granite.

### FINDINGS OF FACT

Claimant GRANITE EQUIPMENT LEASING CORPORATION, hereinafter referred to as Granite, leased two sets of equipment in 1969 to a Washington real estate developer named Glen Corning. It is unclear whether Mr. Corning acted on his own behalf when he signed the leases as "owner" or whether he acted as an agent for a joint venture known as Rimrock Meadows. The participants in the Rimrock joint venture included one of the debtors in this case, NAAC/W, and a Washington limited partnership known as Wendell West, of which Mr. Corning was general partner.

In the early seventies, the Wendell West partnership found itself in financial difficulty, and it sought a real property arrangement under Chapter XII of the Bankruptcy Act. As part of that Chapter XII proceeding, in 1971, NAAC, NAAC/W, and Wendell West entered into a "Comprehensive Agreement." Under the terms of that agreement, NAAC/W agreed to bear, "without recourse," one-half of the indebtedness incurred by Corning on behalf of the Rimrock joint venture. Part of that indebtedness, according to Schedule F of the agreement, was attributable to the obligations owed to Granite under the 1969 leases.

Payments on the lease obligations were borne successively by Corning, Wendell West, and, ultimately, for a couple of years, by NAAC. Soon after the NAAC companies petitioned for reorganization, however, payments on the leases ceased. This occurred at a time when over 80% of the obligations under the leases were satisfied. Counsel for Granite, not knowing whether to pursue Corning or the NAAC companies for the unpaid installments under the leases, began writing the Trustee for the reorganizing debtors to inquire whether the Trustee was going to make provision for payment of the lease obligations out of the estates of the debtors. This series of correspondence, which began in April, 1974, which was shortly after the debtors' petitions were filed and almost a year prior to the bar date, shows that two members of Granite's legal staff were aware of the instant reorganization proceedings and were cognizant of the need to act swiftly for fear of losing their rights to participate in the proceedings. *See* series of correspondence introduced at trial as Trustee's Exhibits 2 through 8.

Ultimately, Granite sought satisfaction of its claim from Mr. Corning personally, and in October, 1978, Mr. Corning paid Granite $19,000. In exchange for that payment, Granite quitclaimed the leased equipment to Mr. Corning, released him from any remaining liability under the leases, and filed a termination statement of any UCC article 9 security interest that Granite might have had in the equipment.

Almost simultaneously with the release of and settlement with Mr. Corning, Granite filed its proofs of claims against NAAC and NAAC/W. The Clerk of this Court received those proofs of claims on December 12, 1978.

As of that date, the NAAC proceedings had progressed to the point that a plan had been confirmed and all available funds were committed. The NAAC/W proceedings were not and still are not so far advanced.

## CONCLUSIONS OF LAW

The threshold question is whether, regardless of the liability of the debtors, claimant Granite has shown this Court that its late filing was caused by "excusable neglect." R.Bankr.Proc. 906(b); 10–401(b); 10–901.[1] Since it is this Court's conclusion that such a showing of excusable neglect has not been made, any issues concerning the validity of Granite's claim need not be addressed.[2]

---

1. Rule 906(b) is made applicable in Chapter X by Rule 10–901. While proofs of claim are not normally required to be filed in reorganization proceedings, whenever a claim is disputed, a proof of claim must be filed in order for the creditor to participate. R.Bankr.Proc. 10–401(b)(3). In the instant case, since the Trustee formulated his list of creditors on the basis of books kept by the debtors, he objected to all claims made, thereby rendering every claim disputed and forcing all creditors to file proofs of claim.

   While extensions of time for the filing of proofs of claim are available in Chapter X proceedings by virtue of the above-cited Rules of Bankruptcy Procedure, such extensions are *not* universally available in proceedings before the Bankruptcy Courts. *See* § 57n, Bankruptcy Act; *In re Weis Securities, Inc.,* 411 F.Supp. 195 (S.D.N.Y.), *aff'd mem.,* 538 F.2d 317 (2d Cir. 1975).

2. Accordingly, whether Mr. Corning acted as an agent for the Rimrock Meadows joint venture when he signed the Granite leases need not be decided. Similarly, there is no need to decide whether there was a valid assignment of obligations under the leases to NAAC or NAAC/W. *See Allhusen v. Caristo Construction Corp.,* 303 N.Y. 446, 103 N.E.2d 891 (1952). Nor is there any reason to address the meaning of NAAC/W's assumption "without recourse" of one-half of the obligations as part of its

"Excusable neglect" is not only the standard under which courts may grant extensions of time for filing proofs of claim in Chapter X proceedings, but also the standard according to which extensions of time may be granted for most purposes under the Federal Rules. Fed.R.Civ.P. 6(b).

Leading experts on federal courts have characterized this standard as "an elastic concept [which] seems to require a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified." C. Wright & A. Miller, 4 *Federal Practice & Procedure* § 1165 (1969).

When interpreting "excusable neglect" within the context of Bankruptcy Rules 10–401 and 906(b), courts have generally allowed the late filing only when such things as the "slowness of the mails" are at fault. *E. g., In re Daniel Delmonico,* 5 C.B.C. 385 (Bk.Ct.D.Minn.1975) (3 day delay). Contrary to the position taken by counsel for Granite, an inquiry into the existence of excusable neglect does not require a finding to be made about whether allowing a late filing would have a prejudicial effect. R.Bankr.Proc. 906(b); *In re Four Seasons Securities Laws Litigation,* 493 F.2d 1288 (10th Cir. 1974); *In re North American Acceptance Corp.,* No. B74–290A (order entered May 15, 1979, subordinating late claim of World Wide Coin Investments, Ltd.); C. Wright & A. Miller, *supra* at § 1165. Since prejudice is not an essential element of excusable neglect, this Court need not address the difficult question about whether the debtors and creditors in these cases have been prejudiced by Granite's late filing.[3]

Claimant Granite was aware of the reorganization proceedings of these debtors almost immediately after the petitions were filed. *See* Trustee's Exhibit No. 12. Such knowledge alone has been held to be sufficient to reject late proofs of claims. *In re North American Acceptance Corporation,* No. B74–290A (order entered May 15, 1979 rejecting late claim by World Wide Coin Investments, Ltd.). In the instant case, a notice of the bar date was mailed to claimant, and a notice of the bar date, as recommended and approved by United States District Judge Edenfield, appeared in The Atlanta Constitution on July 11, 1974, and July 16, 1974.

Nearly four years elapsed between the bar date and the filing of Granite's claim. During that time, Granite's counsel knew of the need to act to preserve its rights, but no action was taken; meanwhile, NAAC obtained confirmation of a plan, and NAAC/W denied any legal obligation to pay sums due under the lease and, in the alternative, claimed a right to the collateral/equipment.

As Granite's own counsel stated in a letter to an employee of NAAC, ". . . it is imperative . . . to determine what course of action Granite must take in either pursuing Glen Corning or filing a claim against NAAC." (Trustee's Exhibit No. 4). Granite then settled with and released Mr. Corning and sold the equipment for which NAAC/W was supposedly obligated to pay rental fees.

Considering all the surrounding facts and circumstances, this Court concludes that Granite's three and one-half year delay in filing its proofs of claims cannot be said to have been caused by excusable neglect, notwithstanding Granite's argument that it never actually received a notice of the bar date from the Trustee.

Accordingly, claimant Granite Equipment Leasing Corporation's proofs of claims are hereby DENIED for lack of a showing of "excusable neglect." In accordance with

"Comprehensive Agreement" with Wendell West in 1971.

**3.** The difficulty of the question is evidenced, for example, by the fact that the leases in question may have been financing arrangements; that possibility raises problems concerning the sale of the collateral/equipment without full compliance with the provisions of part five of article 9 of the Uniform Commercial Code.

Also NAAC has had a Plan of Reorganization confirmed; all available funds have been distributed or committed pursuant to the plan.

Rule of Bankruptcy Procedure 10–401, Granite is therefore excluded from participating in the approval of the plans of the above-styled reorganizing debtors and from receiving any distributions under those plans.

IT IS SO ORDERED AND ADJUDGED at Atlanta, Georgia this 7th day of December, 1979.