**In the Matter of James Cletus DUES d/b/a Dues Livestock Farms and Janet Veronica Dues, Debtors.**

**Bankruptcy No. 88–10495.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

March 17, 1989.

Grant F. Shipley, Fort Wayne, Ind., for debtor.

John Bator, Indianapolis, Ind., for Farm Credit Bank.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court with regard to objections to confirmation of Debtors' proposed Chapter 12 plan, filed on behalf of the Farm Credit Bank. The actual merits of the objections are not before the court. Instead, the issue which confronts us is whether the court can or should consider those objections because they have not been timely filed.

The operative facts with regard to the timeliness of the objections are not in dispute. These facts are set forth in a submission filed by the Debtors on August 25, 1988. Although the Farm Credit Bank has not joined in this submission, its brief indicates those factual representations are not in dispute. Accordingly, this decision is based upon the facts set forth in that submission and the court's record in this proceeding.

Debtors filed a petition for relief under Chapter 12 of the United States Bankruptcy Code on April 18, 1988. Among their properly scheduled creditors is the objector. Notice of the bankruptcy filing was issued

to all creditors, including Farm Credit, on April 28, 1988. This notice advised creditors that Debtors had filed a petition for relief and indicated the date and time at which the 341 meeting of creditors would be held. The 341 meeting was held on May 18, 1988 and was attended by counsel for Farm Credit.

Prior to the 341 meeting, Debtors filed their proposed Chapter 12 plan. Notice of the plan was issued to all creditors, on May 17, 1988, which advised them that a hearing would be held, on June 17, 1988, to consider its confirmation. The notice was accompanied by a copy of the plan and established June 10, 1988 as the last day for filing objections to confirmation. The notice was served upon and received by the objector. It was not, however, served upon objector's counsel. This fact is not surprising, since an appearance had not been filed on behalf of Farm Credit and it was not until June 8, 1988 that counsel filed a claim on its behalf. Either of these actions would have been necessary for the court to add counsel to the matrix of creditors to whom the various bankruptcy notices are sent. Farm Credit apparently neglected to send a copy of the confirmation notice to its attorneys. Counsel was, however, aware of the proposed plan and, in early June, corresponded with Debtors' counsel concerning its terms.

The confirmation hearing took place as scheduled. The only creditor to attend this hearing was the Farmers Home Administration. The FmHA was also the only creditor to file any objection to the plan prior the confirmation hearing. The stated basis of this objection was that the FmHA would receive more upon liquidation than under the terms of the plan. By this objection (as indicated by the FmHA's subsequent pre-trial statement) it was the FmHA's position that the plan had understated the amount of its secured claim, by placing too low a value upon its collateral. Although the Chapter 12 Trustee did not attend the confirmation hearing, prior to the hearing he filed his review of the plan. Based upon this review and information concerning the Debtors' farming operations, the Trustee reported that all requirements for confirmation had been met and that the plan should be confirmed.

Because of the FmHA's objection to confirmation, the court did not confirm the plan following the June 17th hearing. Neither did it receive evidence concerning the terms of the plan or the requirements of confirmation. Instead, the court directed that the issues raised by the objections to confirmation would be scheduled for a pre-trial conference. This pre-trial was scheduled for July 21, 1988.

On July 21, 1988, Farm Credit filed its own objections to confirmation. This was the first time this creditor officially voiced any problems with the plan as proposed. These objections are dramatically different from those raised by the FmHA. Farm Credit complains that the plan has been proposed by means forbidden by law. By this, it contends the plan's provisions concerning the treatment of its claim are contrary to the provisions of the Farm Credit Act, 12 U.S.C. 2001 et seq. It also objects on the basis that defaults are not cured, the plan is not feasible, and that it will receive more upon liquidation.

The Debtors have recently resolved the only timely objection to confirmation, through a stipulation modifying the plan's treatment of FmHA which has been approved by the court. Accordingly, the only remaining obstacle to confirmation is the objection filed by Farm Credit.

While the Bankruptcy Code establishes the requirements for confirmation of a plan, it is the Rules which establish the procedure by which the plan comes before the court and objections to it are entertained. All parties in interest are to be given at least twenty-five days notice of the confirmation hearing. Bankruptcy Rule 2002(b). Where objections to confirmation are concerned, they

> *shall be filed* with the court and served on the debtor, the trustee, any committee appointed under the Code and on any other entity designated by the court, *within a time fixed by the court.* Bankruptcy Rule 3020(b)(1) (emphasis supplied).

There is no question that notice of the confirmation hearing and the deadline for objections to confirmation was properly given to and received by Farm Credit. Although this notice was not sent to creditor's counsel, as of the date of mailing, counsel had done nothing to advise the court of its involvement in the case. There is also no question that Farm Credit's objections to confirmation were filed late and substantially so. They were not filed until July 21, 1988—more than a month after the initial confirmation hearing had been concluded and almost seven weeks after the time for doing so had passed.

 Both parties have urged the court to look to that great reservoir of equitable power known as § 105 as a basis to either entertain or overrule Farm Credit's objections. Section 105 is not, however, applicable to the matter before the court. It may only be used as a basis for the court's action where other applicable law does not address the situation. Consequently, it does not permit the court "to disregard the clear language and meaning of the bankruptcy statutes and rules." *Official Committee of Equity Security Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987). In this instance, the Bankruptcy Rules provide specific guidance as to dealing with untimely submissions. The principles embodied in those rules must be applied and § 105 may not be appealed to.

Bankruptcy Rule 9006 deals with time, its computation, reduction and enlargement. It provides:

[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. Bankruptcy Rule 9006(b)(1).

The provisions of this rule apply to untimely objections to confirmation. *In re Snider Farms, Inc.,* 83 B.R. 977, 980–81 (Bankr. N.D.Ind.1988). Consequently, whether or not the court entertains Farm Credit's untimely objection is committed to the court's discretion. *In re Condel, Inc.,* 91 B.R. 79, 80–81 (9th Cir. BAP 1988). Before the court can exercise this discretion, however, it must first find cause for doing so. Additionally, since we are confronted with an untimely objection, the Rule requires the objector to also demonstrate that its "failure to act was the result of excusable neglect." *In re Bajan Resorts, Inc.,* 71 B.R. 52, 54 (Bankr.D.Utah 1987).

Farm Credit has the affirmative burden of proving that its failure to file a timely objection to confirmation resulted from excusable neglect. *Hanson v. First National Bank of South Dakota, N.A.,* 828 F.2d 1310, 1314 (8th Cir.1987); *In re O.P.M. Leasing Services, Inc.,* 48 B.R. 824, 830 (D.S.D.N.Y.1985); *In re Mullins,* 55 B.R. 618, 622 (Bankr.W.D.Va.1985). This concept is not defined anywhere in either the Bankruptcy Code or the rules of procedure. Instead, "it is a flexible standard that is subject to interpretation by the trier of fact in each instance." *Hanson v. First Bank of South Dakota, N.A., supra,* 828 F.2d at 1314. Generally, however, it is regarded "as meaning the failure to timely perform a duty due to circumstances beyond the reasonable control of the person whose duty it was to perform." *Id.; In re South Atlantic Financial Corp.,* 767 F.2d 814, 817 (11th Cir.1985).

Under this approach, the focus of the court's inquiry is on the actions of the party seeking the additional time. *Hanson v. First Bank of South Dakota, N.A., supra,* 828 F.2d at 1315; *In re South Atlantic Financial Corp., supra,* 767 F.2d at 819. "[E]xcusable neglect is determined with reference to the person whose duty it was to perform." *Hanson v. First Bank of South Dakota, N.A., supra,* 828 F.2d at 1315. It does not depend upon a finding of any prejudice or lack of prejudice to those involved. *Matter of North American Acceptance Corp.,* 1 B.R. 438, 441 (Bankr.N. D.Ga.1979). Prejudice is not a relevant inquiry. *In re South Atlantic Financial*

*Corp., supra,* 767 F.2d at 818.[1]

Excusable neglect is often associated with some type of defect in the service of notice. It does not exist "where the delay could have been prevented by the diligence of the party. Ordinary negligence is not enough." *In re Breining,* 8 B.R. 17, 21 (Bankr.S.D.N.Y.1980) (citation omitted). Thus, "conduct does not constitute excusable neglect ... when the delay was within the creditor's control ... and could have been prevented by the exercise of diligence by the party failing to perform." *Hanson v. First Bank of South Dakota, N.A., supra,* 828 F.2d at 1314–15 (citations omitted).

■ Measured against this standard, Farm Credit's failure to file a timely objection to confirmation was not the result of excusable neglect. There has been no showing that its failure to act in a timely manner was due to anything remotely resembling circumstances beyond its reasonable control or that its failure could not have been prevented through ordinary diligence. The only apparent cause of the problem was the creditor's unexplained failure to communicate with its counsel and share the information it received from the court concerning proceedings on confirmation. At best, this is nothing more than ordinary negligence. Since Farm Credit has failed to demonstrate any reason that its failure to file a timely objection to confirmation was not within its reasonable control those objections remain untimely and should, therefore, be denied.

Although the court believes that the standard adopted by both the Eighth and Eleventh Circuits represents the appropriate definition of excusable neglect, it is aware of a competing and apparently somewhat more liberal application of the concept. Under this standard, although the burden of proof continues to remain with the delinquent party, the court is required to consider and balance three factors. *See In re Mullins, supra,* 55 B.R. at 622; *In re*

*O.P.M. Leasing Services, Inc., supra,* 48 B.R. 830–31. These are: (1) the adequacy of the notice provided, (2) the source of the delay, and (3) the prejudice, if any, that will inure to the debtor should the objection be allowed. The only substantive difference between this formulation and the standard the court has chosen to apply is the role played by prejudice. Here, prejudice becomes a factor in determining whether excusable neglect exists, as opposed to an element to be considered in how the court should exercise its discretion once excusable neglect has been demonstrated.

Even under this somewhat more liberal standard, Farm Credit's objections must still be considered untimely. Farm Credit was fully and completely aware of Debtors' petition under Chapter 12 and that, as a result, its rights against them might be affected. This knowledge gave rise to a heightened duty of diligence, to follow these proceedings if it desired to protect its interests. *Matter of Gregory,* 705 F.2d 1118, 1123 (9th Cir.1983); *In re Torres,* 15 B.R. 794, 797 (Bankr.E.D.N.Y.1981). The notice it received concerning proceedings on confirmation was more than sufficient to comply with the requirements of due process and the more rigorous requirements of the Bankruptcy Rules. The only cause for the delay rests in its own failure to communicate with its counsel—something which was completely and exclusively within its control. To deem the objections timely and, thus, consider them on their merits will prejudice the Debtors. Farm Credit's objections to confirmation are completely different from and independent of the timely objections filed by FmHa. To hear them on the merits would require the debtor to meet and respond to objections which otherwise would not exist, causing not only additional delay but expense as well.

We realize that Farm Credit may be prejudiced if we do not entertain its objections, although this is not certain since they may not be valid. Nonetheless, we must recog-

---

**1.** The issue of prejudice only becomes relevant once the court is satisfied that excusable neglect has been shown. Prejudice to any of the parties involved then becomes a factor in the court's

consideration as to how it should exercise its discretion with regard to the untimely act. *See Hanson v. First Bank of South Dakota, N.A., supra,* 828 F.2d at 1315.

nize that the only reason its objections have gotten this far is the fortuitous delay which resulted from the FmHa's timely objections. But for those objections, the plan might have been confirmed and the opportunity to appeal confirmation would have expired long before Farm Credit ever complained. Under these circumstances, we do not believe that, given the adequate notice, the length and cause of the delay, any balance of the equities sufficiently favors the objector so that its objections should be heard further. *See In re Snider Farms, Inc., supra*, 83 B.R. at 980–81.

Having disposed of Farm Credit's objections to confirmation, the court now turns its attention to the ultimate question of the confirmability of Debtors' proposed Chapter 12 plan. On this point, Farm Credit suggests that the court cannot confirm the plan, regardless of any disposition of its objections, because the court has never received evidence concerning the plan and is, therefore, unable to make the findings required by 11 U.S.C. § 1225 which are necessary to support confirmation.

It must be acknowledged that, although the court has held a hearing on the question of confirmation, it has never held the kind of hearing which Farm Credit believes is required. The court has never held a hearing at which it has formally received evidence, either by way of exhibits or testimony, concerning § 1225's various requirements for confirmation. It is not this court's practice to hold such hearings, unless there is a reason to do so.

In this district, the initial hearing on confirmation is not an evidentiary one. It is scheduled before the court on its miscellaneous calendar. The purpose of the hearing is simply to determine whether or not there are any objections to confirmation. If so, the objections will be scheduled for further proceedings and, if necessary, an evidentiary hearing. If there are no objections to confirmation, the court makes it decision based upon the information contained in its file and the trustee's recom-

mendation. Even where an evidentiary hearing is held, the nature of the evidence received is limited to that which is relevant to the objections actually filed and does not extend to any elements of confirmation which are not in issue. This is a practice which, in Judge Schmetterer's words, is "so ancient and unquestioned that 'the memory of man runneth not to the contrary.'" *In re Wyslak*, 94 B.R. 540, 543 (Bankr.N.D.Ill. 1988). Accordingly, Farm Credit's position questions the very foundations of this court's procedural world. If well taken, it means that the court's confirmation procedures for all cases are in error and must be changed.[2]

To continue with Judge Schmetterer's observations, the "[a]ge of an unquestioned practice justifies a careful review before changing the practice, but does not immunize that practice from being questioned." *Id.* Accordingly, this court will take the opportunity to review its procedures with regard to confirmation hearings, in order to determine whether or not an evidentiary hearing is required as to any or all of the requirements of § 1225, in the absence of a timely objection to confirmation. If so, Debtors' plan cannot be confirmed at the present time and must be the subject of further proceedings.

The Bankruptcy Code specifically requires the court to hold a hearing on confirmation. Section 1224 states "the court shall hold a hearing on confirmation of the plan." The Code does not, however, elaborate further or give any guidance as to what type of hearing is required. The legislative history to Chapter 12 and its Chapter 13 counterpart, § 1324, is not instructive. The only legislative comments on the court's obligation to hold a confirmation hearing are contained in a senate report, concerning a version of § 1128 which was subsequently abandoned. This comment contemplated that "the duration of the hearing depends on the nature of the case and the matters and issues in dispute." *Senate Report* No. 95–989 p. 124, U.S.Code

---

**2.** Although this case arises under Chapter 12 of the Bankruptcy Code, the procedures which the court follows with regard to the confirmation of plans in Chapters 11 and 13 are sufficiently similar that they, too, are undermined.

Cong. & Admin.News 1978, pp. 5785, 5910. This is at least a small indication that the nature of a confirmation hearing is to be a function of any dispute on the question of confirmation.

The Bankruptcy Code does not define "hearing." It does, however, define a related concept—"after notice and hearing." This or a similar phrase means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances...." 11 U.S.C. § 102(1)(A). This rule of construction would support the proposition that the actual nature of any hearing is to be determined by the particular circumstances in which the need for a hearing arises. Depending upon the nature of the dispute and the issues involved, this may or may not require the formal reception of evidence.

The Bankruptcy Rules also provide some illumination concerning proceedings on confirmation and the confirmation hearing generally.[3] Rule 3020(b)(2) specifically permits the court to find that two of the various confirmation requirements have been met without receiving any evidence on the subject.

> If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues. Bankruptcy Rule 3020(b)(2).

It is, thus, apparent that, at least in the absence of a timely objection, the court is not required to formally receive evidence on all of the issues governing confirmation.

The fundamental nature of confirmation proceedings is also insightful. The question of confirmation *per se* is neither an adversary proceeding nor a contested matter under the Bankruptcy Rules. It only becomes a contested matter once an objection to confirmation has been filed. Bankruptcy Rule 3020(b)(1). It is at this point that the more formal rules of procedure,

such as discovery, consolidation of trials, and the requirement for findings of fact and conclusions of law, come into play. *See* Bankruptcy Rule 9014. In the absence of a timely objection "[a] hearing on confirmation of a plan is not an adversarial proceeding, rather it is an equitable proceeding...." *In re Ratmansky*, 7 B.R. 829, 833 (Bankr.E.D.Pa.1980). Thus, unless and until an objection is filed, "[t]he issue of confirmation of a plan need not be determined by an adversary proceeding but may be determined by the bankruptcy judge in the exercise of his equitable powers in administering cases under the Code." *Id.* at 834. *See also In re Stuart Glass & Mirror, Inc.*, 71 B.R. 332, 335 (Bankr.S.D.Fla. 1987).

There are also practical considerations which need to be evaluated. If we accept the proposition that the court must hold an evidentiary hearing, how thorough and extensive should this hearing be? How detailed a case should we require counsel to present? Would five minutes suffice, would a day be too much or too little? Depending upon the degree of specificity required and the complexity of a debtors' financial affairs, a hearing at either end of these extremes could be too much or too little.

■ At confirmation, the debtor is not expected to present "evidence and arguments ... hypothetical objections." *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1267 (10th Cir.1988) (citation omitted). Thus, even if an evidentiary hearing were required, it is extremely doubtful that non-objecting creditors would be able to participate. The entire fabric and structure of the Bankruptcy Code is premised on the concept of active creditor participation. If an inactive, non-objecting creditor is allowed to participate at such a hearing, what purpose would be served by requiring objections to confirmation to be

**3.** Bankruptcy Rule 3020(b)(2) provides that the court's decision on confirmation is to be made "after notice and hearing." Unlike the provisions of § 1128, § 1224, and § 1324 this would seem to indicate that, at least in the absence of a timely objection, no hearing of any kind would be required as to confirmation. The court is also aware of more than one jurisdiction which conducts its confirmation proceedings accordingly.

filed by a date certain? Rule 3020(b)(1) would then become meaningless. *Id.*

It is, at least theoretically, possible that the debtor could be called to the stand and counsel could ask the six or seven questions required by § 1225, to which the client would make the appropriate response. This would be the end of the hearing since, in the absence of opposition, there is no one to cross-examine or inquire further. Such a hearing would satisfy any strict requirement that the court formally receive evidence concerning confirmation, but it would not be a meaningful hearing. It certainly would not comply with the spirit of such a requirement.

We must also remember that debtor's attendance at a confirmation hearing is not required. *In re Perskin,* 9 B.R. 626, 628–30 (Bankr.N.D.Tx.1981). It strikes this court as being somewhat difficult to present evidence concerning confirmation without the debtor appearing to testify. Accordingly, there must be something else upon which the court can base its confirmation decision.

Another important reality is that the court does not have the time to conduct evidentiary hearings on confirmation, in the absence of objections. Almost nine-hundred cases were filed under Chapters 11, 12 and 13 in this district during 1988. In most instances, when debtor's proposed plan comes before the court, confirmation is not opposed by any party in interest. Even where objections are filed, those objections are usually resolved without the need for an evidentiary hearing. It would be quite impossible for this court to fulfill its responsibilities to the other litigants and matters before it if it were required to conduct a detailed evidentiary inquiry into every element of confirmation in the absence of objections. "The bankruptcy courts are too overburdened to deal with hypothetical objections that apathetic or careless creditors do not advance themselves." *In re Sweetwater,* 57 B.R. 748, 750 (D.Utah 1985), *aff'd, In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988).

Farm Credit points to the court's independent duty to review the proposed plan, in order to satisfy itself that the confirmation requirements of § 1225 are fulfilled. It then suggests this duty can be met only by conducting an evidentiary hearing.

The court agrees that it has an independent obligation to review every plan which becomes before it. This "responsibility is not excused by creditor inactivity." *In re Stuart Glass & Mirror, Inc., supra,* 71 B.R. at 335; *In re Martin,* 17 B.R. 924 (N.D.Ill.1982). This is also an obligation that cannot be fulfilled through a cursory or perfunctory review of the plan. Accordingly, "no proponent of any plan or any argument should ever assume that because no objections are raised the plan will be reviewed in a cursory manner or not reviewed at all by the Court." *In re Trail's End Lodge, Inc.,* 54 B.R. 898, 903 (Bankr. D.Vt.1985).

This duty does not, however, require the court to doff its robes and assume the role of an advocate or become a grand inquisitor. It should protect and be cognizant of the rights and interests of all the parties to the proceeding. The obligation does not require a detailed investigation of the debtor and its activities or an evidentiary hearing on the question of confirmation. Instead, the court is to act as a guardian to see that the requirements of the law have been fulfilled.

For all of the foregoing reasons the court holds that, in the absence of a timely objection to confirmation, it is not required to hold an evidentiary hearing, at which witnesses would be called, testimony taken, and exhibits offered, before determining whether or not a proposed Chapter 12 plan may be confirmed. *See In re Powell,* 15 B.R. 465, 473 n. 17 (Bankr.N.D.Ga.1981). The court may base its decision upon a review of the proposed plan, together with any information submitted in conjunction with it, the trustee's report concerning confirmation and the other materials contained in the court's record. If this information is sufficient to persuade the court that the requirements of confirmation have been met, the plan may properly be confirmed, without receiving further evidence. *See In*

*re Waldman,* 88 B.R. 59 (D.E.D.Pa.1988). If, on the other hand, this information is not sufficient to satisfy these requirements, the court may deny confirmation without receiving further evidence. *See In re Stuart Glass & Mirror, Inc., supra,* 71 B.R. 332. Even where objections to confirmation are timely filed, the court need not receive evidence on all of the requirements of confirmation. It may properly limit the evidence presented to the issues raised by the objection. *See In re Snider Farms, Inc., supra,* 83 B.R. 977.

Since, in the absence of a timely objection, the court is not required to hold an evidentiary hearing concerning confirmation and all outstanding objections to Debtors' proposed plan have been resolved, the issue of confirmation is properly before the court. Accordingly, we must determine if the information which Debtors have submitted in connection with the plan, together with the Trustee's report and the other information contained in the court's file, establish whether or not § 1225's requirements for confirmation have been met.

Section 1225 of the Bankruptcy Code establishes a number of requirements for confirmation. It also provides that the court "shall confirm a plan if" all of these requirements are met. 11 U.S.C. § 1225(a).

The first element of confirmation requires that the plan comply with the provisions of Chapter 12 and the other applicable provisions of Title 11. 11 U.S.C. § 1225(a)(1). The Trustee's review of the Debtors' plan indicates they are eligible for relief under Chapter 12 and that all of the mandatory requirements concerning the contents of the plan have been fulfilled. Furthermore, there is nothing in the record before the court which indicates that either the Debtors or the proposed plan fails to comply with any provision of either Chapter 12 or Title 11.

The second requirement for confirmation is that all fees and charges required by Chapter 123 of Title 28 or by the plan,

which are to be paid before confirmation, have been paid. The court's records indicate this requirement has been fulfilled and nothing before the court would suggest otherwise.

The third requirement for confirmation demands the plan be proposed in good faith and not by any means forbidden by law.[4] There are no timely objections to confirmation and the Trustee's review of the plan indicates this requirement has been fulfilled. Accordingly, the court finds this to be true. See Bankruptcy Rule 3020(b)(2); *In re Hines,* 723 F.2d 333 (3rd Cir.1983).

The fourth requirement for confirmation is that the value of any distribution to unsecured creditors be at least equal to what they would receive in the event of liquidation under Chapter 7. The Trustee reports this requirement has been fulfilled and that the recovery of unsecured creditors, pursuant to the plan, will substantially exceed their anticipated distribution in the event of a Chapter 7 liquidation. The liquidation analysis, which is contained in the Debtors' proposed plan, indicates the value of their unencumbered non-exempt assets only slightly exceeds $10,200.00. It is the value of this property, less the expenses associated with its disposition, which would be available to satisfy the costs and expenses of administration and the various unsecured claims against the bankruptcy estate. If the plan operates as expected, the Chapter 12 Trustee will have a total of $13,500.00 with which to pay these same claims. Accordingly, the court finds that this requirement has been fulfilled.

The fifth requirement for confirmation is directed to the plan's treatment of secured claims. Unless a secured creditor has accepted the plan certain standards must be met. In this instance, there are no timely objections to confirmation which have not been resolved to the satisfaction of the parties. Since creditors are expected and required to take an active role in protecting

---

**4.** To the extent Farm Credit argues that this is not so because its treatment does not comply with the requirements of the Farm Credit Act, the objection appears to be without merit. *In re*

*Neff,* 89 B.R. 672, 675–77 (Bankr. S.D. Ohio, 1988); *In re Caudill,* 82 B.R. 969, 974–75 (Bankr. S.D.Ind.1988).

their claims, in the absence of a timely objection, the court may presume that secured creditors have accepted the plan. *In re Ruti–Sweetwater, Inc., supra,* 836 F.2d at 1267–68. Accordingly, the court finds that the holder of each allowed secured claim has accepted the plan.

■ The sixth requirement for confirmation is one of feasibility. The court must find that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). The Chapter 12 Trustee has reviewed the plan's feasibility analysis, in light of the Debtors' historical cash flow, and reports this requirement for confirmation has been fulfilled. The court may base its decision on this report. *In re Waldman, supra,* 88 B.R. at 62. The court has also reviewed Debtors' projected cash flow, in light of the information contained in the summary of operations and the changes they have made in the nature of their farming operations, and believes they have made a satisfactory demonstration of their ability to make all payments under the plan and to comply with the plan. This is especially so when one remembers that the appropriate standard for determining feasibility is not one of mathematical certainty or guaranteed success. Instead, the debtor need only demonstrate a reasonable assurance of economic viability or a reasonable probability that the plan can be successfully implemented and performed.

The last requirement for confirmation is an optional one. If the Trustee or any unsecured creditor objects to confirmation, the plan cannot be confirmed unless it contemplates full payment of all unsecured claims or the debtors are willing to dedicate 100% of their projected disposable income, for a period of three years, to the payments the plan requires. *See* 11 U.S.C. § 1225(b)(1). In this instance, no timely objection to confirmation has been filed by the Trustee or any unsecured creditor. Accordingly, we need not consider this requirement. The court would note, however, that based upon Debtors' projected cash flow, the proposed plan would meet the disposable income test.

■ The court recognizes that Farm Credit has suggested Debtors' failure to build a cash "cushion" into their projections requires denial of confirmation. While such a cushion may be appropriate, it is not an absolute necessity. Indeed, it would seem difficult to comply with the disposable income test of § 1225(b)(1)(B) where the plan incorporates such a contingent cash reserve. Furthermore, where a debtor's projected cash flow is based upon a reasonably accurate historical analysis of expenses, it will probably already reflect such a cushion. A review of the debtors' projected cash flow indicates that it includes anticipated expenses for such things as maintenance, repairs and equipment replacement. Accordingly, it would appear that the plan, as formulated, already includes the "cushion" Farm Credit would require.

Based upon the court's review, all of the requirements of 11 U.S.C. § 1225 have been fulfilled. Accordingly, the court is required to confirm Debtors' proposed plan.

An appropriate order will be entered.