**In re 499 W. WARREN STREET ASSOCIATES, LTD. PARTNERSHIP, Debtor.**

**Bankruptcy No. 91–01973.**

United States Bankruptcy Court, N.D. New York.

July 28, 1992.

Hancock & Estabrook, Syracuse, NY (Stephen A. Donato, of counsel), for debtor.

Costello, Cooney & Fearon, Syracuse, NY (Michelle Lombino, of counsel), for Fleet Bank of New York (formerly Norstar Bank of Upstate New York).

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Presently before the Court in this single asset real estate case filed under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") is the cross-motion of Fleet Bank of New York ("Fleet"), as successor-in-interest to Norstar Bank of Upstate New York, for relief from the automatic stay pursuant to Code § 362(d)(2), or, alternatively, for dismissal of the case pursuant to Code § 1112(b)(2).

On July 15, 1991, 499 W. Warren Street Associates ("Debtor") filed an application for authority to use certain rents generated by its real property. On July 22, 1991, the Court entered a consent interim Order authorizing Debtor's use of $20,000 of such rents, which authorization was thereafter continued in effect by four consensual extensions of the interim Order. On November 14, 1991, Fleet filed the instant cross-motion ("cross-motion"). Thereafter, an interim settlement between the parties was reached concerning the issues raised by Debtor's application for rents and the cross-motion. Pursuant to this settlement, Debtor paid to Fleet $34,000, and the interim Order was extended and the cross-mo-

tion was adjourned, in both instances until March 19, 1992.

Thus, on March 19, 20, April 6, 7, and May 1, 1992, the Court held evidentiary hearings on Debtor's application to use the rents and on the instant cross-motion for relief from the stay or dismissal of the case. During the course of these hearings, the Court bifurcated Debtor's application for use of the rents and Fleet's cross-motion. By Order dated June 19, 1992, the Court authorized Debtor's use of a limited portion of the rents for the purpose of paying the reasonable and necessary operating expenses of Debtor's real property. Following the receipt of memoranda of law, Fleet's cross-motion was submitted for decision on June 30, 1992.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1) and (b)(2)(G).

## FACTS

Debtor is a New York limited partnership engaged in the business of leasing office space in a building which it owns in Syracuse, New York (the "Property").

On July 11, 1991, Debtor filed a voluntary petition for reorganization under Chapter 11 of the Code thus preventing Fleet from foreclosing its mortgage on the Property. Debtor is indebted to Fleet in the amount of $2,191,924.57, secured by a first mortgage on the Property and an assignment of rents. Debtor also owes to Mechanics and Farmers Savings Bank FSB ("Mechanics") $569,616.70, secured by a second mortgage on the Property and a second assignment of rents. Debtor's Property manager, Sutton Real Estate Co. ("Sutton"), holds an unsecured claim against Debtor in the approximate amount of $29,000.

Additionally, Debtor is indebted to the City of Syracuse ("City") in the amount of $635,746.22 for unpaid real property taxes for the tax years encompassing the last half of 1988 through 1991. On October 29, 1991, however, Debtor filed a motion seek-

ing a review and reduction of these tax assessments, pursuant to Code § 505(a). On March 10, 1992, this Court issued a decision granting Debtor's § 505(a) motion, and tentatively scheduled an evidentiary hearing on the issue for the latter part of June, 1992, which has since been adjourned to September 24, 1992. Debtor contends that if it is successful in getting these tax assessments reduced, it can achieve a savings which can be distributed to creditors under its proposed Plan of Reorganization ("Plan").

Debtor's proposed Plan and Disclosure Statement were filed with the Court on December 5, 1991. By Order dated December 6, 1991, the Court extended Debtor's exclusivity periods in which to file a plan and in which to solicit acceptances of same to January 15, 1992, and March 15, 1992, respectively. By Order of the Court dated February 10, 1992, March 9, 1992 was fixed as the last date for voting on Debtor's Plan, and a hearing on confirmation of the Plan was scheduled for March 19, 1992.

Both the City and Fleet filed ballots rejecting the Plan, as well as objections to its confirmation. Mechanics did not vote on the Plan, but instead filed a motion seeking an extension of time in which to vote on the Plan. Only Sutton accepted the Plan. In response, Debtor filed a motion to extend its time to solicit acceptances of the Plan. By Order of the Court dated March 26, 1992, Debtor's time to solicit such acceptances was extended to April 28, 1992, as was Mechanics' time to vote on the Plan. Also, the confirmation hearing was adjourned to April 28, 1992.

Mechanics did not vote on the Plan by April 28, and on that date withdrew its motion for an extension of time in which to vote. Also on April 28, the Court, over Fleet's objection, extended to May 26, 1992 Debtor's time to solicit acceptances of its Plan, and adjourned the confirmation hearing to that date as well. On May 26, the confirmation hearing was adjourned indefinitely. By Order dated June 1, 1992, the Court extended Debtor's right to solicit acceptances of its Plan until 15 days after the entry of an order by the Court resolving Fleet's motion to lift the stay or dismiss the case. That motion is now before the Court.

## ARGUMENTS

Fleet argues that the automatic stay must be lifted pursuant to Code § 362(d)(2) or the case dismissed pursuant to § 1112(b)(2) because Debtor is unable to effectuate a plan of reorganization. Because Debtor admits that it has no equity in the Property, Fleet's argument focuses entirely on the contention that the Property is not necessary for an effective reorganization. *See* 11 U.S.C. § 362(d)(2)(B). In this regard, Fleet argues that an effective reorganization by the Debtor is not possible for several reasons. First, Fleet asserts that Debtor's Plan can only be funded by rents from the Property, which this Court has previously determined constitute Fleet's cash collateral and may only be used by the Debtor to pay the reasonable and necessary costs of maintaining and operating the Property.

Secondly, assuming *arguendo* that Debtor could use the rents to fund its Plan, Fleet takes issue with the basic payment schedule proposed by the Plan, insofar as Debtor would pay the respective claims of Fleet and Mechanics in monthly installments over 15 years, but amortized over 30 years with a balloon payment in the 15th year. In this regard Fleet appears to maintain that based upon its income and expense projections, Debtor will be unable to make such a balloon payment.

Moreover, Fleet disputes Debtor's income and expense projections. Specifically, it contends that "Debtor's income projections [are] highly inflated and based on unsupported and over-optimistic speculation by the Debtor that rental income for the Real Property [will] increase dramatically." Fleet also maintains that Debtor has not sufficiently budgeted for future capital improvements to the Property, such as replacement of an HVAC system which is 28 years old and original to the building.

Most importantly, however, Fleet argues that Debtor's Plan is patently unconfirmable because it improperly classifies claims in an attempt to secure the affirmative

vote of at least one class of impaired claims.

Debtor concentrates its argument on the feasibility of its Plan, and its position is therefore the opposite of Fleet's on this issue. However, Debtor offers no argument on the issue of claims classification.

## DISCUSSION

■ Under Code § 362(d)(2), the Court must grant relief from the stay if—

(A) the debtor does not have an equity in [its] property; and

(B) such property is not necessary to an effective reorganization.

Debtor admits that it has no equity in the Property. Thus, it has the burden of proving that the Property is necessary to an effective reorganization. *See* 11 U.S.C. § 362(g).

■ It is undisputed that Debtor will be unable to reorganize without the Property, which is its sole asset. However, under Code § 362(d)(2) the Debtor must show that the Property is needed for an *"effective* reorganization." The Supreme Court has stated that the phrase "necessary for an effective reorganization" found in Code § 362(d)(2)(B) requires:

[N]ot merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988). "The definition of 'effective reorganization' articulated by the Supreme Court in the *Timbers* case necessarily implicates, to a degree, consideration of the plan confirmation standards under 11 U.S.C. § 1129." *In re 266 Washington Assoc.,* 141 B.R. 275, 281 (Bankr.E.D.N.Y. 1992). While the plan confirmation standards of Code § 1129(a) should generally not be analyzed in connection with a motion

to lift stay, *see id; Matter of Holly's, Inc.* 140 B.R. 643 (Bankr.W.D.Mich.1992), where a debtor submits a proposed plan before the lift stay hearing, as has occurred here, *Timbers* requires a determination that such plan is not "patently unconfirmable." *See In re 266 Washington Associates,* 141 B.R. at 281; *In re Woodscape Ltd. Partnership,* 134 B.R. 165 (Bankr.D.Md.1991); *In re Lumber Exchange Ltd. Partnership,* 125 B.R. 1000 (Bankr.D.Minn.1991), *aff'd,* 134 B.R. 354 (D.Minn.1991), *aff'd,* 968 F.2d 647 (8th Cir.1992).

■ The standards for confirmation of a Chapter 11 plan are set forth in Code § 1129. Succinctly stated, "[a] plan may not be confirmed unless either (1) it is approved by two-thirds in amount and more than one half in number of each 'impaired' class, 11 U.S.C. § 1126(c), 1129(a)(8); or (2) at least one impaired class approves the plan, § 1129(a)(10), and the debtor fulfills the cramdown requirements of § 1129(b) to enable confirmation notwithstanding the plan's rejection by one or more impaired classes." *Matter of Greystone III Joint Venture,* 948 F.2d 134, 137–138 (5th Cir. 1991) *vacated in part per curiam, reh'g en banc denied,* 948 F.2d 142 (5th Cir. 1992), *petition for cert. filed,* (May 27, 1992); *See also In re 266 Washington Associates,* 141 B.R. at 281; *In re Cantonwood Associates,* 138 B.R. 648, 652 (Bkrtcy.1992).

Debtor's Plan places the secured claims of Fleet and the City into respective separate and impaired classes, of which they are the only members. As previously indicated, both Fleet and the City have voted to reject the Plan. Debtor is therefore unable to satisfy the prerequisite for consensual confirmation under Code § 1129(a) contained in Code § 1129(a)(8), which provides that each impaired class must accept the plan.

Hence, confirmation of the Plan can only be achieved under the cramdown provisions of Code § 1129(b). Pursuant to Code § 1129(b), if all the requirements of Code § 1129(a), excluding § 1129(a)(8), are satisfied, the Court must confirm the Plan if it does "not discriminate unfairly" and is "fair and equitable" with respect to dis-

senting impaired classes. 11 U.S.C. § 1129(b)(1).

Thus, compliance with the provisions of Code § 1129(a), excluding subsection (a)(8), is a prerequisite to cramdown under § 1129(b). Fleet argues that Debtor cannot cramdown its Plan under Code § 1129(b) because the Plan improperly classifies claims, and thus does not comply with § 1122, as is required by § 1129(a)(1). Enmeshed within this argument is Fleet's further contention that proper classification of claims by the Debtor renders compliance with Code § 1129(a)(10) impossible. Code § 1129(a)(10) requires acceptance of the plan by at least one impaired class, and such acceptance must be determined without including the votes of insiders. Fleet asserts that Debtor cannot create an accepting impaired class without violating Code § 1122.

Debtor's Plan provides for the following classification of claims and interests:

Class 1—The pre-petition allowed secured claim of the City ... for unpaid real estate taxes for tax years 1988 through 1991, exclusive of non-pecuniary charges.

Class 2—The pre-petition allowed secured claim held by (Fleet), to the extent secured by perfected and unavoidable pre-petition liens against the Property.

Class 3—The pre-petition allowed secured claim held by (Mechanics), to the extent secured by perfected and unavoidable pre-petition liens against the Property.

Class 4—Each holder of an Administrative Claim.[1]

Class 5—Each holder of an allowed non-priority pre-petition unsecured claims (sic).

Class 6—The allowed subordinated pre-petition, unsecured claim held by the City for non-pecuniary penalty charges

concerning the unpaid pre-petition allowed real estate tax claims.

Class 7—The interests held by the general partner and limited partner of the Debtor.

Debtor concedes that classes 1, 2, 3, 5, and 6 are impaired under the Plan. As previously indicated, Fleet and the City object to the Plan. Mechanics has abstained and Sutton has accepted. For the reasons set forth herein, Debtor's only hope of getting an impaired class to accept the Plan must be reposed in Class 5, concerning unsecured claims.

Debtor maintains that it has no equity in the Property and that Fleet's claim is undersecured in relation to the Property's value. Fleet maintains that the fair market value of the Property is $1,500,000, as testified to by its appraiser, Paul Wicker ("Wicker"). Debtor asserts that, although it stipulated to the fact that Fleet is undersecured, it did not stipulate to what extent Fleet is undersecured, and appears not to agree with Wicker's conclusion that the fair market value of the Property is $1,500,000. Yet Debtor provided no testimony or other evidence concerning the fair market value of the Property, despite ample opportunity to do so.[2] Debtor did produce David Peatfield, whose testimony primarily concerned an estimation of market or economic rent for the Property. (*See* Debtor's Exhibit K). Peatfield's testimony, however, was clearly offered to show that the value of the Property was not declining. Peatfield drew no conclusions as to overall fair market value, and the Court finds that his testimony did not serve to refute Wicker's fair market valuation of the Property. The Court therefore accepts Wicker's conclusion that the value of the Property is presently $1,500,000.

Thus, by operation of Code § 506(a), Fleet has two claims. Fleet has a secured claim to the extent of the value of its

---

**1.** While Debtor has designated administrative claimants as a "class" of creditors, it is noted that such classification is contrary to Code § 1123(a)(1). A proposed plan requires no acceptance by administrative claimants so long as it complies with Code § 1129(a)(9)(A).

**2.** In this regard the Court notes that, in view of Debtor's pending Code § 505 motion, it is conceivable that Debtor is taking the undisclosed position that the value of the Property is actually less than $1,500,000.

collateral, as well as an unsecured claim for the undersecured deficiency. 11 U.S.C. 506(a). *See also In re 266 Washington Associates,* 141 B.R. at 281. As previously indicated, Fleet has a total claim in the amount of $2,191,924.57. Because the value of the Property is $1,500,000, and the taxes owed to the City amount to $635,746.22, Fleet has a secured claim in the amount of $864,253.80, and an unsecured deficiency claim in the amount of $1,327,670.77.[3] Thus, Mechanics' subordinate claim in the amount of $569,616.70, though ostensibly secured, is in fact wholly unsecured.[4] Fleet therefore argues that its unsecured deficiency claim and Mechanics' unsecured claim must be placed within Class 5, pursuant to Code § 1122(a).

Code § 1122(a) provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Code § 1122(a) does not, however, directly address the propriety of placing similar claims in separate classes. But as the Fifth Circuit observed in *Greystone:*

> [The] suggestion that § 1122 does not prevent classification of like claims in separate classes is oversimplified. It is true that § 1122(a) in terms only governs permissible *inclusions* of claims in a class rather requiring (sic) that all similar claims be grouped together. One cannot conclude categorically that § 1122(a) prohibits the formation of different classes from similar types of claims. But if § 1122(a) is wholly permissive regarding the creation of such classes, there would be no need for § 1122(b) specifically to authorize a class of smaller unsecured claims, a common feature of plans in reorganization cases past and present. The broad interpretation of § 1122(a) adopted by the lower courts would render § 1122(b) superflu-

ous, a result that is anathema to elementary principles of statutory construction. 948 F.2d at 138–139.

■ Thus, while Code § 1122(a) may permit classification of similar claims in different classes, courts have consistently concluded that a debtor's discretion in this area is limited, and such classification must be done for reasons unrelated to an attempt to gerrymander an affirmative vote on a reorganization plan. *See id.* at 139; *In re Lumber Exchange Ltd. Partnership,* 968 F.2d at 650; *In re Bryson Properties, XVIII,* 961 F.2d 496, 502 (4th Cir.1992); *In re Holywell Corp.,* 913 F.2d 873, 880 (11th Cir.1990); *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1313 (8th Cir.1987); *In re U.S. Truck Co.,* 800 F.2d 581, 586 (6th Cir.1986); *In re 266 Washington Associates,* 141 B.R. at 281; *In re Cantonwood Associates,* 138 B.R. at 655; *In re MCorp Financial, Inc.,* 137 B.R. 219, 226–227 (Bankr.S.D.Tex.1992). Thus, separate classification of different unsecured claims will be allowed if a reasonable basis exists for such classification. *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 757 (Bankr.S.D.N.Y.1992). However, simple invocation of the distinction between Code–created unsecured deficiency claims and other unsecured claims, without more, does not warrant separate classification of such claims. *See Bryson,* 961 F.2d at 502 (citing *Greystone,* 948 F.2d at 140); *Lumber Exchange,* 968 F.2d at 650; *Hanson,* 828 F.2d at 1313; *In re Briscoe Enterprises Ltd., II,* 138 B.R. 795, 808 (N.D.Tex. 1992); *266 Washington Associates,* 141 B.R. at 281; *Cantonwood Associates,* 138 B.R. at 656–657; *In re Stoneridge Apartments,* 125 B.R. 794, 796 (Bankr.W.D.Mo. 1991); *In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 830 (Bankr.S.D.N.Y.1982); *reh'g denied,* 21 B.R. 478 (Bankr.S.D.N.Y. 1982). *But see In re Bjolmes Realty*

---

**3.** It is to be noted that in computing the Fleet deficiency, the past due real property taxes must be factored in since, pursuant to state law, those taxes constitute a pre-petition lien on the Property, which primes Fleet's mortgage. The Court notes conversely that pursuant to this Court's Order of June 19, 1992, certain monthly rentals are being remitted to Fleet to be applied against

its secured debt. There is no competent proof before the Court, however, as to the amount that has been actually remitted to date.

**4.** Neither Fleet nor Mechanics have elected to have their respective claims treated as fully secured pursuant to Code § 1111(b)(2).

*Trust,* 134 B.R. 1000 (Bankr.D.Mass.1991); *In re Triple R Holdings, L.P.,* 134 B.R. 382 (Bankr.N.D.Cal.1992).

■ In the instant case, Debtor has offered no justification for its apparent isolation of the unsecured claims of Fleet, Mechanics, and Sutton, respectively. Nor does the Court discern any reasonable justification for this action. The Court therefore concludes that these aforementioned claims must be placed together in one impaired class, namely Class 5, under Debtor's Plan.

With the unsecured claims of Fleet, Mechanics, and Sutton necessarily placed together in Class 5, the question now becomes whether this class will accept Debtor's Plan so as to guarantee compliance with Code § 1129(a)(10), and thereby provide a basis for consideration of a potential cramdown of the remaining classes under Code § 1129(b). Acceptance of a Chapter 11 plan by a class of claims is governed by Code § 1126(c), which provides in pertinent part that a class accepts a plan if the holders of at least two-thirds in amount and more than half in number of the claims of such class accept the plan.

The Court notes that the evidentiary hearings in this case were focused heavily on the issue of the feasibility of Debtor's Plan. The Court thus heard much testimony concerning, among other things, Debtor's income and expense projections, fair market rental analyses, cash flow analyses, prospective occupancy rates for office buildings in Syracuse, and the prospective condition of the Syracuse commercial real estate market in general. What clearly emerged from these hearings is Fleet's belief that Debtor's Plan is not feasible, which explains its objection to the Plan.[5] Both Fleet and the City objected to Debtor's Plan, and their decision must be effectuated by the Court regardless of the merits of Debtor's Plan. *See Norwest Bank*

*Worthington v. Ahlers,* 485 U.S. 197, 207, 108 S.Ct. 963, 969–70, 99 L.Ed.2d 169 (1988). Thus, in the present context, the issue is not feasibility, but rather acceptance of the Plan.

Class 5 contains three claims, each of which are held by different claimants. Thus, under Code § 1126(c), for the class to accept the Plan, at least two claimants within the class must vote to accept the Plan. As indicated, Sutton has accepted the Plan, and Fleet has rejected the Plan.[6] Debtor's only hope to secure the affirmative votes of "more than half in number" is for Mechanics to accept the Plan. Mechanics has abstained from voting, and in ordinary circumstances would thus be deemed to have rejected the Plan. *See In re Broad Associates Ltd. Partnership,* 110 B.R. 632, 634–635 (Bankr.D.Conn.1990); *In re Friese,* 103 B.R. 90, 91–92 (Bankr.S.D.N.Y. 1989); *In re Townco Realty, Inc.,* 81 B.R. 707, 708 (Bankr.S.D.Fla.1987). *But see In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 1266–67 (10th Cir.1988); *In re Campbell,* 89 B.R. 187, 188 (Bankr.N.D.Fla.1988). In this instance, however, the Court had extended Debtor's time to solicit acceptances of its Plan until 15 days from the resolution of the present motion. It is therefore conceivable, though unlikely, that Mechanics may vote to accept the Plan before expiration of that period.

■ However, even if Debtor secures the affirmative vote of Mechanics, it will not satisfy Code § 1126(c) because it will be unable to obtain affirmative votes representing two-thirds of the total amount of unsecured claims comprising Class 5. For such purposes, Fleet presently controls $1,327,670.77 or approximately 69% of the $1,926,287.47 in total unsecured claims in Class 5. Thus, because Fleet will not accept the Plan, Class 5 cannot accept the Plan, and Debtor's Plan is unconfirmable.[7]

---

**5.** The City also objects to the Plan on feasibility grounds, as well as on the basis that the Plan generally fails to comply with the requirements of Code § 1129(a).

**6.** Fleet argues that Sutton is an insider and that its vote therefore cannot be counted in determining acceptance by Class 5. It is not clear

that Sutton is an insider, however, and for the reasons set forth herein, the Court need not make such a determination.

**7.** The Court is constrained to note that Wicker assigns a value of $2,383,000 to the Property if it is "equitably assessed" for tax purposes, but cautions that this figure is to be used for infor-

Based upon the foregoing, the Court must conclude that Debtor is unable to gain acceptance of its Plan by an impaired class of claims. As a result, Debtor's Plan is unconfirmable, and Debtor therefore has no prospect for an effective reorganization, which warrants that the automatic stay be lifted pursuant to Code § 362(d)(2). In this instance, however, the Court finds that lifting the automatic stay pursuant to Code § 362(d)(2) would effectively be tantamount to dismissal of the case. Therefore, the Court finds that it is in the best interest of creditors to dismiss Debtor's Chapter 11 case pursuant to Code § 1112(b)(2). *See In re Lumber Exchange Ltd. Partnership,* 125 B.R. at 1000, *aff'd* 968 F.2d at 650; *In re 266 Washington Associates,* 141 B.R. at 288; *In re Cantonwood Associates,* 138 B.R. at 648.

IT IS SO ORDERED.

mational purposes only and "cannot be given weight as it is too speculative to assume the assessment can be changed." (*See* pp. 37, 44 of Appraisal of Wicker Appraisal Associates, labelled as Norstar's Exhibit 1). Debtor largely ignores this aspect of Wicker's appraisal, and offers no competing estimate as to the value of the Property if equitably assessed. It is conceivable that based upon a significantly higher valuation of the Property, Fleet's unsecured deficiency claim would shrink proportionately to a point where it could not control Class 5's acceptance or rejection of the Plan and, assuming Mechanics voted to accept the Plan during the extension period, Code § 1129(a)(10) would be satisfied, opening the way for cramdown of Fleet's and the City's secured claims.

The Debtor, however, does not seize upon this argument. Moreover, the Court would find the Debtor estopped from making such an argument on the basis of its repeated stipulations during the hearings, and again in its memorandum of law, that Fleet is undersecured. The effect of such stipulation is that the value of the Property from Debtor's perspective is less than $2,191,924.57. Valuation for the purposes of a lift stay motion must be determined at or near the date of the disposition of same. *See Matter of Seip,* 116 B.R. 709, 712 (Bankr.D.Neb.1990) (valuation for purposes of confirmation should be determined at or near date of confirmation). *See also In re Briggs Transportation Co.,* 780 F.2d 1339, 1349 (8th Cir.1985) (value determination for automatic stay purposes not necessarily same as value determination for confirmation purposes). Thus, for purposes of the instant lift stay motion, the Court must utilize the Property's current value. As the Court has previously determined the current value of the Property to be $1,500,000, Fleet's deficiency claim stands at $1,327,670.77 and Mechanics' entire claim remains unsecured.